1
2
3
4
5
6          **UNITED STATES DISTRICT COURT**
7             **DISTRICT OF NEVADA**
8
9   JEREMY SETTLES,
10         Petitioner,                        Case No. 3:10-cv-00779-RCJ-VPC
11  vs.                                       **ORDER**
12  ROBERT LEGRAND, et al.,
13         Respondents.
14
15         Before the court are the second amended petition for a writ of habeas corpus (#9),
16  respondents' answer (#32), and petitioner's reply (#34).  The court finds that relief is not warranted,
17  and the court denies the second amended petition.
18         In state district court, petitioner agreed to plead guilty to one count of attempted lewdness
19  with a child under the age of 14.  Ex. 5 (#16).[1]  The plea agreement informed petitioner that he
20  would be sentenced to lifetime supervision in addition to any other penalties provided by law.  Id. at
21  2 (#16).  The judgment of conviction was entered on April 18, 2008.  Ex. 6 (#16).  The state court
22  sentenced petitioner to prison for a maximum term of 240 months and a minimum term of 96
23  months, and the state court also imposed a special sentence of lifetime supervision.  Id.  Petitioner
24  did not appeal.  On March 25, 2009, petitioner filed in state district court a post-conviction habeas
25  corpus petition.  Ex. 7 (#16).  The state district court first denied the petition because it was not
26  verified.  Ex. 9 (#16).  Petitioner appealed.  The Nevada Supreme Court reversed and remanded to
27  _____
28         [1]Unless stated otherwise, the exhibits cited were filed in support of respondents' motion to
    dismiss (#15).

1   give petitioner an opportunity to correct the defect.  Ex. 10 (#16).  Petitioner then filed a petition

2   and memorandum with the verification.  Ex. 11 (#16).  The state district court denied the petition on

3   March 4, 2010.  Ex. 14 (#16).  Petitioner appealed.  The Nevada Supreme Court affirmed.  Ex. 16

4   (#16).

5          Petitioner then commenced this action.  The second amended petition (#9) is the operative

6   petition.  Respondents filed a motion to dismiss (#15).  The court adopted respondents' division of

7   petitioner's grounds for relief into sub-grounds.  For various reasons, grounds 1(d), 1(f), 1(g), 4(a),

8   4(b), 6(a), 6(b), 6(c), 6(d), 6(e), 6(f) have been dismissed.

9          Congress has limited the circumstances in which a federal court can grant relief to a

10   petitioner who is in custody pursuant to a judgment of conviction of a state court.

11          An application for a writ of habeas corpus on behalf of a person in custody pursuant to the
       judgment of a State court shall not be granted with respect to any claim that was adjudicated
12       on the merits in State court proceedings unless the adjudication of the claim—

13       (1) resulted in a decision that was contrary to, or involved an unreasonable application of,
       clearly established Federal law, as determined by the Supreme Court of the United States; or
14
       (2) resulted in a decision that was based on an unreasonable determination of the facts in
15       light of the evidence presented in the State court proceeding.

16   28 U.S.C. § 2254(d).  "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the

17   merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  Harrington v.

18   Richter, 131 S. Ct. 770, 784 (2011).

19          Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown
       that the earlier state court's decision "was contrary to" federal law then clearly established in
20       the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or
       that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was
21       based on an unreasonable determination of the facts" in light of the record before the state
       court, § 2254(d)(2).
22

23   Richter, 131 S. Ct. at 785.  "For purposes of § 2254(d)(1), 'an unreasonable application of federal

24   law is different from an incorrect application of federal law.'"  Id. (citation omitted).  "A state

25   court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

26   jurists could disagree' on the correctness of the state court's decision."  Id. (citation omitted).

27          [E]valuating whether a rule application was unreasonable requires considering the rule's
       specificity.   The more general the rule, the more leeway courts have in reaching outcomes in
28       case-by-case determinations.

-2-

1  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004).

2
> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

3

4

5  <u>Richter</u>, 131 S. Ct. at 786.

6
> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

7

8

9  <u>Id.</u>, at 786-87.

10       Ground 1 contains claims of ineffective assistance of counsel.  "[T]he right to counsel is the

11  right to the effective assistance of counsel."  <u>McMann v. Richardson</u>, 397 U.S. 759, 771 & n.14

12  (1970).  A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the

13  defense attorney's representation "fell below an objective standard of reasonableness," <u>Strickland v.</u>

14  <u>Washington</u>, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced

15  the defendant such that "there is a reasonable probability that, but for counsel's unprofessional

16  errors, the result of the proceeding would have been different," <u>id.</u> at 694.  "[T]here is no reason for

17  a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to

18  address both components of the inquiry if the defendant makes an insufficient showing on one."  <u>Id.</u>

19  at 697.

20       <u>Strickland</u> expressly declines to articulate specific guidelines for attorney performance

21  beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the

22  duty to advocate the defendant's cause, and the duty to communicate with the client over the course

23  of the prosecution.  466 U.S. at 688.  The Court avoided defining defense counsel's duties so

24  exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . .  Any

25  such set of rules would interfere with the constitutionally protected independence of counsel and

26  restrict the wide latitude counsel must have in making tactical decisions."  <u>Id.</u> at 688-89.

27       Review of an attorney's performance must be "highly deferential," and must adopt counsel's

28  perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight."

1   Strickland, 466 U.S. at 689.  A reviewing court must "indulge a strong presumption that counsel's

2   conduct falls within the wide range of reasonable professional assistance; that is, the defendant must

3   overcome the presumption that, under the circumstances, the challenged action 'might be considered

4   sound trial strategy.'"  Id. (citation omitted).

5       The Sixth Amendment does not guarantee effective counsel per se, but rather a fair

6   proceeding with a reliable outcome.  See Strickland, 466 U.S. at 691-92.  See also Jennings v.

7   Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002).  Consequently, a demonstration that counsel fell

8   below an objective standard of reasonableness alone is insufficient to warrant a finding of

9   ineffective assistance.  The petitioner must also show that the attorney's sub-par performance

10  prejudiced the defense.  Strickland, 466 U.S. at 691-92.  There must be a reasonable probability that,

11  but for the attorney's challenged conduct, the result of the proceeding in question would have been

12  different.  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence

13  in the outcome."  Id.

14          Establishing that a state court's application of Strickland was unreasonable under § 2254(d)
            is all the more difficult.  The standards created by Strickland and § 2254(d) are both "highly
15          deferential," . . . and when the two apply in tandem, review is "doubly" so . . . .  The
            Strickland standard is a general one, so the range of reasonable applications is substantial.
16          Federal habeas courts must guard against the danger of equating unreasonableness under
            Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is
17          not whether counsel's actions were reasonable. The question is whether there is any
            reasonable argument that counsel satisfied Strickland's deferential standard.
18

19  Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (citations omitted).

20      Ground 1(a) is a claim that petitioner was not provided counsel during his interview with

21  state investigators.  This does not appear to be a claim of ineffective assistance of counsel.  The

22  interview occurred before petitioner was charged with the crimes at issue in this case.  The Sixth

23  Amendment's guarantee of counsel, and effective assistance of counsel, is offense-specific and does

24  not accrue until the formal commencement of criminal charges against petitioner.  Kirby v. Illinois,

25  406 U.S. 682, 689 (1972) (plurality opinion).  Ground 1(a) appears to be a claim that the

26  investigators violated Miranda v. Arizona, 384 U.S. 436 (1966), because they did not advise

27  petitioner of his rights before interrogating him.  This is a claim of a constitutional violation that

28  occurred before petitioner entered his guilty plea.

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

Tollett v. Henderson, 411 U.S. 258, 267 (1973).  Ground 1(a) is not a claim that the plea was unknowing and involuntary, and it appears not to be a claim that the Sixth Amendment right to counsel was violated.  Therefore, it would be barred by Tollett v. Henderson.

Even if ground 1(a) was a claim of ineffective assistance of counsel, it is without merit.  The Nevada Supreme Court did consider an ineffective-assistance claim related to the interrogation.  Petitioner raises the same claim in ground 5(c) of the second amended petition.  The Nevada Supreme Court held:

> Sixth, appellant claimed that trial counsel was ineffective for failing to file a motion to suppress his confession and evidence found because of that confession and claimed that had trial counsel filed the motion he would not have pleaded guilty.  Appellant was on parole and the confession arose out of two polygraph examinations and subsequent interviews.  Appellant claims that he should have been given Miranda v. Arizona, 384 U.S. 436 (1966), warnings because these were custodial interrogations.  Contrary to appellant's assertion, the United States Supreme Court has stated that interviews with probation officers are not custodial, and therefore, Miranda does not apply.  See Minnesota v. Murphy, 465 U.S. 420, 430-32 (1984).  It can be extrapolated that the same law applies to parole officers as they function similarly to probation officers.  Accordingly, appellant failed to demonstrate that this motion had a reasonable probability of success because he failed to demonstrate that the confession should have been suppressed.  Therefore, the district court did not err in denying this claim.

Ex. 15, at 3-4 (#16) (footnote omitted).  Petitioner quotes a treatise, which in turn cites two cases from state courts, for the proposition that parole officers must give Miranda warnings.  See People v. English, 534 N.E.2d 1195 (N.Y. 1989); State v. Willis, 825 P.2d 357 (Wash. App. 1992).  These cases are distinguishable for two reasons.  First, unlike petitioner, the defendants in those cases were in jail, and undoubtedly in custody when questioned by parole officers.  Second, this court's review is limited to determining whether the Nevada Supreme Court's ruling is contrary to, or an unreasonable application of, decisions of the Supreme Court of the United States.  See 28 U.S.C. § 2254(d).  Decisions of other state courts might be persuasive, but they do not determine whether a different decision from the Nevada Supreme Court is unreasonable.  As the Nevada Supreme Court noted, Murphy held that the obligation to appear before a probation officer does not amount to

1    custody within Miranda's meaning of the term, and thus the protections of Miranda do not apply.

2    465 U.S. at 430-32.  The only distinction between Murphy and petitioner's case is that petitioner

3    was on parole, not probation, but given the functional equivalence of those two statuses, the Nevada

4    Supreme Court reasonably could have extended Murphy to petitioner's case.  Furthermore, the

5    Nevada Supreme Court reasonably could have concluded that the lack of a motion to suppress was

6    not deficient performance by counsel, because Miranda was inapplicable to petitioner's situation.

7    Grounds 1(a) and 5(c) are without merit.

8         In ground 1(b), petitioner claims that he was without counsel for one and a half months

9    during the arraignment and preliminary proceedings of his case.  Respondents note that petitioner

10   was appointed counsel at his initial appearance before a justice of the peace, and petitioner concedes

11   the point.  Ground 1(b) is without merit.

12        In ground 1(c), petitioner alleges that he asked his counsel about Miranda issues, and that

13   counsel lied, stating that parole officers did not have to adhere to Miranda.  Counsel was correct, for

14   the reasons stated in the court's discussion of ground 1(a), above.  Ground 1(c) is without merit.

15        In ground 1(e), petitioner claims that counsel failed to follow petitioner's directions to move

16   to withdraw his guilty plea.  Petitioner refers to exhibits C-3, D-2, and H-3 of the second amended

17   petition's exhibit 2 (#9).  In the supporting memorandum to his state habeas corpus petition,

18   petitioner cites to those exhibits in support of the fact that the prosecution lost contact with the

19   victim before petitioner was sentenced.  Ex. 11, at 19 (#16).  On this issue, the Nevada Supreme

20   Court held:

21        Fourth, appellant claimed that trial counsel was ineffective for ignoring information
          discovered after the guilty plea agreement was signed that the State lost contact with the
22        victim.  Appellant failed to demonstrate that trial counsel's performance was deficient.
          Once appellant signed the guilty plea agreement and admitted to the facts of the charged
23        conduct, the victim's presence was no longer necessary.  Therefore, the district court did not
          err in denying this claim.
24

25   Ex. 15, at 3 (#16).  In pleading guilty, petitioner waived his constitutional right to confront and

26   cross-examine any witnesses who would have testified against him.  Ex. 5, at 4 (#16).  Having

27   released the prosecution from the obligation to prove its case, petitioner cannot then turn around and

28   argue that the prosecution is unable to prove its case.  The Nevada Supreme Court applied

1  Strickland reasonably in holding that counsel did not perform deficiently by not filing a motion to

2  withdraw the plea based upon the disappearance of the victim.

3       In ground 1(h), petitioner claims that counsel failed to maintain contact with petitioner.  On

4  this issue, the Nevada Supreme Court held:

5            First, appellant claimed that trial counsel was ineffective for not contacting appellant
             between the arraignment and the preliminary hearing.  Appellant failed to demonstrate that
6            he was prejudiced.  Appellant failed to demonstrate a reasonable probability that he would
             not have pleaded guilty and insisted on going to trial had counsel met with him more
7            frequently.  Therefore, the district court did not err in denying this claim.

8  Ex. 15, at 2 (#16).  The state petition contained no evidence that the lack of communication caused

9  petitioner to plead guilty, and thus the Nevada Supreme Court's decision was a reasonable

10 application of Strickland.

11      Petitioner argues in the reply that he actually was referring to the time between his plea of

12 guilty, January 18, 2008, and the sentencing hearing, April 8, 2008, when he was trying to tell his

13 attorney to move to withdraw the guilty plea because the prosecution had lost contact with the

14 victim.  Reply, at 5 (#34).  To that extent, ground 1(h) is redundant to ground 1(e), and it is without

15 merit for the same reasons.

16      In ground 1(i), petitioner claims that counsel failed to inform him about a direct appeal.  The

17 analysis of whether a defendant was denied a direct appeal due to ineffective assistance of counsel

18 has four steps.  First, has the defendant instructed counsel to file an appeal or asked not to take an

19 appeal?

20           [A] lawyer who disregards specific instructions from the defendant to file a notice of appeal
             acts in a manner that is professionally unreasonable. . . .   At the other end of the spectrum, a
21           defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain
             that, by following his instructions, his counsel performed deficiently.
22

23 Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000).  Second, if the defendant did not give instructions,

24 has counsel consulted with the defendant about a direct appeal?

25           We employ the term "consult" to convey a specific meaning-advising the defendant about
             the advantages and disadvantages of taking an appeal, and making a reasonable effort to
26           discover the defendant's wishes.  If counsel has consulted with the defendant, the question of
             deficient performance is easily answered: Counsel performs in a professionally unreasonable
27           manner only by failing to follow the defendant's express instructions with respect to an
             appeal.
28

-7-

1    Id. at 478 (emphasis added).  Third, if counsel did not consult with the defendant about the direct

2    appeal, was that deficient performance by counsel?

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal
> when there is reason to think either (1) that a rational defendant would want to appeal (for
> example, because there are nonfrivolous grounds for appeal), or (2) that this particular
> defendant reasonably demonstrated to counsel that he was interested in appealing. In making
> this determination, courts must take into account all the information counsel knew or should
> have known.

7    Id. at 480 (citation omitted).  Fourth, if the lack of consultation was deficient performance, was the

8    defendant prejudiced?  "[T]o show prejudice in these circumstances, a defendant must demonstrate

9    that there is a reasonable probability that, but for counsel's deficient failure to consult with him

10   about an appeal, he would have timely appealed."  Id. at 484.

11          Petitioner presented this ground to the Nevada Supreme Court in a supplemental brief in the

12   appeal from the denial of his state habeas corpus petition.  Opposition, Ex. E, at 2 (#18).  The

13   Nevada Supreme Court disposed of the ground summarily.  Ex. 15, at 4 n.4 (#16).  This court

14   presumes that the Nevada Supreme Court considered the matter on the merits.  Johnson v. Williams,

15   133 S. Ct. 1088, 1094 (2013).

16          The court can answer the first two steps of the Flores-Ortega analysis promptly.  Petitioner

17   did not instruct counsel to file a direct appeal, and counsel did not consult with petitioner about a

18   direct appeal.  The question is whether the lack of consultation was deficient performance.  In the

19   supplemental brief filed with the Nevada Supreme Court, petitioner cited to pages 15-20 of the

20   memorandum supporting his state habeas corpus petition, which is exhibit 11 to respondents'

21   motion to dismiss (#16).  On those pages, petitioner argues three issues that counsel should have

22   argued:  Miranda, the prosecution's loss of contact with the victim, and the gender of the trial judge

23   as a reason for recusal.  None of these were non-frivolous grounds for appeal.  The court has already

24   discussed the first two issues.  As for the gender of the judge, petitioner never alleged in state court

25   any instances of bias on the part of the judge.  Therefore, the Nevada Supreme Court reasonably

26   could have concluded that the lack of consultation about a direct appeal was not deficient

27   performance by counsel.  Ground 1(i) is without merit.

28

1    In ground 2, petitioner claims that he was subject to illegal search and seizure in violation of

2    the Fourth Amendment.  In ground 2(a), he argues that his parole officer ordered him to the parole

3    office, where he was not allowed to leave.  While there, he was questioned by a detective, and that

4    questioning led to petitioner being charged.  In ground 2(b), petitioner argues that his parole officer

5    detained his sister in her home for three hours and coerced her into cooperating with law

6    enforcement.  Ground 2 has two fatal defects.  First, the claims in ground 2 are claims of

7    constitutional violations that occurred before entry of the plea, and thus the guilty plea bars

8    consideration of the claims.  Henderson, 411 U.S. at 267.  Second, the state courts provided

9    petitioner with a full and fair opportunity to litigate these claims in state court; petitioner cannot

10   litigate them in federal habeas corpus.  Stone v. Powell, 428 U.S. 465 (1976).  Ground 2 is without

11   merit.

12   Ground 3 contains the following claims of violations of petitioner's Fifth Amendment rights:

13   (a) state investigators used hostile and abusive language during the interview; (b) state investigators

14   failed to provide petitioner with Miranda warnings prior to polygraph sessions; (c) petitioner was

15   intimidated psychologically and physically by the detectives; (d) parole and probation officers failed

16   to acknowledge and account for petitioner's medical conditions; and (e) detectives "overbore

17   Petitioner's will and manipulated a false, inadmissible confession."  All the claims in ground 3 are

18   claims of constitutional violations that occurred before entry of the plea, and thus the guilty plea

19   bars consideration of the claims.  Henderson, 411 U.S. at 267.  Ground 3 is without merit.

20   In ground 4(c), petitioner claims that the special sentence of lifetime supervision violates the

21   Eighth Amendment because it is a "second successive sentence to the 2 to 20 years for the same

22   offense with the same requirements of proof."  Petitioner presented this claim to the Nevada

23   Supreme Court in his supporting memorandum to his state habeas corpus petition.  Ex. 11, at 21-22

24   (#16).  The Nevada Supreme Court determined that the claim was not permissible under Nev. Rev.

25   Stat. § 34.810(1)(a).  Ex. 15, at 1 n.2 (#16).  The court of appeals has held in the federal criminal

26   system that a sentence of lifetime supervised release for a sex offender does not violate the Eighth

27   Amendment.  United States v. Williams, 636 F.3d 1229 (9th Cir. 2011).  The conditions of

28   supervised release imposed in that case are similar to the conditions of lifetime supervision required

1   by Nevada law.  Compare Williams, 636 F.3d at 1231-32, with Nev. Rev. Stat. § 213.1243.  The

2   court sees no reason why the holding of Williams should not be extended to Nevada's special

3   sentence of lifetime supervision.

4         Petitioner also claims in ground 4(c) that a prison sentence and the sentence of lifetime

5   supervision for the same crime, attempted lewdness with a child under the age of 14, violates the

6   Double Jeopardy Clause of the Fifth Amendment.  The Nevada Legislature specifically authorized

7   cumulative punishment of lifetime supervision along with other penalties for sexual offenses.  "If a

8   defendant is convicted of a sexual offense, the court shall include in sentencing, in addition to any

9   other penalties provided by law, a special sentence of lifetime supervision."  Nev. Rev. Stat. §

10  176.0931(1) (emphasis added).  Because the Nevada Legislature has specifically authorized

11  cumulative punishment, there is no violation of the Double Jeopardy Clause.  Missouri v. Hunter,

12  459 U.S. 359, 368-69 (1983).  Ground 4(c) is without merit.

13        In ground 5(a), petitioner claims that the special sentence of lifetime supervision violates the

14  Equal Protection Clause of the Fourteenth Amendment because it applies only to sex offenders.

15        The Equal Protection Clause does not forbid classifications. It simply keeps governmental
         decisionmakers from treating differently persons who are in all relevant respects alike.
16

17  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).  Petitioner argues that arsonists, murderers, and other

18  criminals are not subject to the special sentence of lifetime supervision.  However, those are

19  different types of crimes than the sexual offense for which petitioner was convicted.  On the other

20  hand, Nevada does require people convicted of a large range of sexual offenses, not just attempted

21  lewdness, to receive the special sentence of lifetime supervision.  Nev. Rev. Stat. § 176.0931(5)(c)

22  (defining "sexual offense").  In the most relevant respect, petitioner is treated no differently than any

23  other person who is convicted of a sexual offense.  Ground 5(a) is without merit.

24        In ground 5(b), petitioner claims that the abusive treatment of the detective who interviewed

25  him violates the Due Process Clause of the Fourteenth Amendment.  This is a claim of a

26  constitutional violation that occurred before the entry of his plea, and thus the guilty plea bars

27  consideration of the claim.  Henderson, 411 U.S. at 267.

28

1        The court considered ground 5(c), a claim that counsel failed to file a motion to suppress

2   because of a <u>Miranda</u> violation, along with ground 1(a), above.

3        In ground 5(d), petitioner claims that the Due Process Clause of the Fourteenth Amendment

4   was violated because he was not provided a copy of the pre-sentence investigation report.  Nevada

5   law requires the pre-sentence investigation report be disclosed to the prosecutor, the defense

6   counsel, and the defendant.  Nev. Rev. Stat. § 176.156(1).[2]  First, "[a] federal court may not issue

7   the writ on the basis of a perceived error of state law."  <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984).

8   Second, the Due Process Clause does not require disclosure of the pre-sentence investigation report.

9   <u>Williams v. New York</u>, 337 U.S. 241, 249-51 (1949).  <u>See also</u> <u>United States v. Coletta</u>, 682 F.2d

10   820, 827 (9th Cir. 1982).  Ground 5(d) is without merit.

11        Grounds 6(g) and 6(h) are claims of violations of the Racketeer Influenced and Corrupt

12   Organizations (RICO) Act, 18 U.S.C. § 1961 <u>et seq</u>.  A person may bring a civil claim pursuant to

13   18 U.S.C. § 1964(c).  The elements are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of

14   racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or

15   property.'"  <u>Grimmett v. Brown</u>, 75 F.3d 506, 510 (9th Cir. 1996).  In ground 6(g), petitioner claims

16   that because the judge, prosecutor, and officers were all female, they must have conspired against

17   him.  In ground 6(h), petitioner claims that lifetime supervision means that he will be under constant

18   threat of false accusation, abuse, and prosecution.  Petitioner has not alleged, let alone provided

19   evidence, that these people have engaged in a "racketeering activity" as defined in 18 U.S.C.

20   § 1961(a).  Petitioner also has not alleged, let alone provide evidence, that these people have injured

21   his business or his property.  Grounds 6(g) and 6(h) are without merit.

22        Reasonable jurists would not find the court's conclusions to be debatable or wrong, and the

23   court will not issue a certificate of appealability.

24        Also before the court are petitioner's additional points and authorities (#35), respondents'

25   motion to strike (#36), and petitioner's response to the motion to strike (#37).  The additional points

26

27

28       [2]Petitioner cites to Rule 32(e)(2) of the Federal Rules of Criminal Procedure, but that rule is
inapplicable to criminal prosecutions in state court.

-11-

1    and authorities are not authorized by Local Rule 7-2, and petitioner did not seek leave of the court to

2    file them.  The court grants respondents' motion.

3         IT IS THEREFORE ORDERED that respondents' motion to strike (#36) is **GRANTED**.

4    The clerk of the court shall **STRIKE** petitioner's additional points and authorities (#35).

5         IT IS FURTHER ORDERED that the second amended petition for a writ of habeas corpus

6    (#9) is **DENIED**.  The clerk of the court shall enter judgment accordingly.

7         IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

8         Dated:  April 15, 2014.

9

10                                                    _____
                                                      ROBERT C. JONES
11                                                    United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28